**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | **ID No. 2208005611** |
| | ) | |
| RAYQUANE G. CHAMBERS, | ) | |
| Defendant. | ) | |

Submitted: July 9, 2024
Decided: August 13, 2024

**ORDER DENYING**
**MOTION TO REDUCE OR MODIFY SENTENCE**

This 13th day of August, 2024, upon consideration of the Defendant's Motion for Sentence Reduction or Modification (D.I. 10) and the record in this matter, it appears to the Court that:

(1)     In August 2022, a grand jury indicted Mr. Chambers for Robbery First Degree, Possession of a Firearm During the Commission of a Felony (PFDCF), Possession or Control of a Firearm by a Person Prohibited (PFBPP), and Conspiracy Second Degree.[1]

(2)     On March 20, 2023, he pleaded guilty to the second-degree robbery (as a lesser offense of the indicted robbery first degree count) and PFBPP.  He did so in exchange for dismissal of the other indicted charges and a favorable joint sentencing

---

[1]    D.I. 1 (Indictment).

- 1 -

recommendation.[2]

(3) The parties expressly agreed that Mr. Chambers would serve an eight-year term of imprisonment.[3] And importantly here, they also expressly agreed that Mr. Chambers' prison terms would run consecutively.[4] The Court immediately sentenced Mr. Chambers after to his plea: (a) for the robbery count—five years at Level V, suspended after serving three years at Level V, for eighteen months of supervised probation; and (b) for the PFBPP count—fifteen years at Level V, suspended after serving five  years at Level V, for eighteen months of supervised probation.[5] In other words, the Court's sentence expressly fulfilled the parties' expectation.

(4) Mr. Chambers filed no direct appeal from his convictions or sentence.

(5) Instead—a little more than a year after his sentencing—Mr. Chambers filed the instant application asking either that his two terms be changed to run concurrently, in which case he would serve only five years, or that the Court halve

---

[2]   D.I. 8 (Plea Agreement).

[3]   *Id*. ("STATE AND DEFENDANT AGREE to recommend . . . As to Count 1 [second-degree robbery]: 5 years Level V suspended after 3 years for 18 months Level 3 probations; As to Count 5 [PFBPP]: 15 years Level V suspended after 5 years for 18 months Level 3 probation.") (emphasis in original).

[4]   *Id*. ("STATE AND DEFENDANT AGREE to recommend:  **Sentence terms:**  Level V is consecutive. Probation is concurrent.") (emphasis in original).

[5]   D.I. 9 (Sentence Order).

his agreed-on robbery sentence.[6]

(6)   The Court may consider a Rule 35(b) motion "without presentation, hearing or argument."[7]   Here, the Court will decide this motion on the papers filed and the complete record in Mr. Chambers' case.   For multiple reasons, Mr. Chambers' application must be denied.

(7)   First, as consideration for his plea, the State: (a) downgraded the first-degree robbery count and dismissed two other felonies sparing Mr. Chambers enhanced minimum mandatory terms; and (b) agreed to an eight-year sentencing recommendation.[8] For his part, Mr. Chambers expressly agreed that the prison terms would run consecutively and with the cumulative eight-year incarcerative period.[9] Given all that, the Court imposed just what the parties agreed to.

(8)   The Court has repeatedly condemned sentence-reduction applications made in circumstances like this:

> What [the Rule 35(b) movant] now does is something suggested by far too many who resolve their serious criminal cases by plea—invite the Court to assist in an inmate's violation of his plea agreement.   When the parties arrive at an agreed-upon number either's request of a sentence other than that expressly bargained for in the plea agreement is, at bottom, a breach of that agreement.   It matters not whether that breaching request is made during the sentencing hearing, immediately thereafter, or

---

[6]   Def. Rule 35(b) Mot. at 5 (D.I. 10).

[7]   Del. Super. Ct. Crim. R. 35(b).

[8]   Plea Agreement at 1.

[9]   *See id.*

anytime later. And the Court should play no role in such chicanery merely because the memory and immediacy of a potential trial with all its burdens and trappings have faded.[10]

Put another way, the Court just won't countenance the use of its Rule 35(b) to undo a movant's express agreement with the State. That's enough reason to deny Mr. Chambers the windfall he's after. But there is more.

(9) "Rule 35(b) requires that an application to reduce imprisonment be filed promptly—i.e. within 90 days of the sentence's imposition—'otherwise, the Court loses jurisdiction' to act thereon."[11] An exception to this bar exists: to overcome the 90-day time limitation, an inmate seeking to reduce a sentence of imprisonment on his own motion must demonstrate "extraordinary circumstances."[12] A heavy burden is placed on the inmate to establish "extraordinary circumstances" in order to uphold the finality of sentences.[13]

(10) The term "extraordinary circumstances" is generally defined as "[a] highly unusual set of facts that are not commonly associated with a particular thing

---

[10] *State v. Gardner*, 2023 WL 4503950, at *3 (Del. Super. Ct. July 12, 2023) (quoting *State v. Felton*, 2022 WL 189327, at *2 (Del. Super. Ct. Jan. 20, 2022) (internal citations omitted)); *see also State v. Daniels*, 2022 WL 2733509, at *4 (Del. Super. Ct. July 13, 2022), *aff'd*, 2023 WL 176964 (Del. Jan. 12, 2023).

[11] *Redden,* 111 A.3d at 607 (internal citations omitted).

[12] *Sample v. State*, 2012 WL 193761, at *1 (Del. Jan. 23, 2012) ("Under Rule 35(b), the Superior Court *only* has discretion to reduce a sentence upon motion made within 90 days of the imposition of sentence, *unless* 'extraordinary circumstances' are shown.") (emphasis added).

[13] *State v. Diaz*, 2015 WL 1741768, at *2 (Del. Apr. 15, 2015) ("In order to uphold the finality of judgments, a heavy burden is placed on the defendant to prove extraordinary circumstances when a Rule 35 motion is filed outside of ninety days of the imposition of a sentence.").

or event."[14] In the Rule 35(b) context, "'extraordinary circumstances' are those which 'specifically justify the delay;' are 'entirely beyond a petitioner's control;' and 'have prevented the applicant from seeking the remedy on a timely basis.'"[15] "And for the purposes of Rule 35(b), 'extraordinary circumstances' have been found only 'when an offender faces some genuinely compelling change in circumstances that makes a resentencing urgent.'"[16] At its core, Rule 35(b) is a rule limited to reconsideration and altering of a sentence after the 90-day motion deadline "only when there is a truly compelling change in that inmate's individual circumstances that presents an urgent need for revision of the sentence's terms."[17]

(11) Mr. Chambers filed his motion more than 15 months after he was sentenced. He "cites the enactment of 11 *Del. C.* § 3901 by the General Assembly as an extraordinary circumstance as it confers a wide latitude of discretion on the sentencing court to impose a concurrent sentence rather than a consecutive one."[18] But even the most recent revisions to § 3901(d) that allow for greater concurrent sentencing occurred well before Mr. Chambers' crimes, plea, and sentencing.[19] The

---

[14]  *Diaz*, 2015 WL 1741768, at \*2 (citing BLACK'S LAW DICTIONARY (10th ed. 2014)); *State v. Remedio*, 108 A.3d 326, 332 (Del. Super. Ct. 2014).

[15]  *Id.*

[16]  *State v. Thomas*, 220 A.3d 257, 262 (Del. Super. Ct. 2019) (quoting *Fountain v. State*, 139 A.3d 837, 842 n.20 (Del. 2016)).

[17]  *Id.*

[18]  Def. Rule 35(b) Mot. at 3.

[19]  *Thomas*, 220 A.3d at 263-64 (outlining the evolution of § 3901(d)).

Court had that concurrent-sentencing discretion when it imposed his sentence. Nothing has changed since then.[20] In short, the mere existence of the Court's discretion to impose concurrent terms of imprisonment under § 3901(d) is not an extraordinary circumstance under Rule 35(b).

(12) Nor are the other factors Mr. Chambers mentions—rehabilitative efforts—the sort Delaware courts have recognized as adequate to shoulder the heavy burden placed on one to establish "extraordinary circumstances" under Rule 35(b).[21] Rather, at this point, the only avenue for the relief he seeks—reduction of his prison term—on the grounds he raises—exceptional rehabilitation—is an application brought by the Department of Correction under 11 *Del. C.* § 4217[22] or via some

---

[20] And even had the law changed after Mr. Chambers' sentencing, that cannot be invoked as an "extraordinary circumstance" that would excuse a tardy sentence reduction motion. *See id.* at 261-63 (Rule 35(b) and its extraordinary circumstances exception "is not some contrivance allowing review of any existing sentencing judgment because of any favorable change in statutory sentencing law occurring after an inmate's sentence was imposed and based on some systemic shifting of principles or policies not specific to the inmate seeking relief.").

[21] *Culp*, 152 A.3d at 145-46 (Del. 2016) (collecting cases) (participation in educational and rehabilitative programs does not constitute "extraordinary circumstances" for purposes Rule 35(b)); *Redden*, 111 A.3d at 607-08 (collecting cases and explaining reasons why rehabilitative efforts aren't "exceptional circumstances" under Rule 35(b)); *State v. Liket*, 2002 WL 31133101, at *2 (Del. Super. Ct. Sept. 25, 2002) ("Exemplary conduct and/or successful rehabilitation do not qualify as extraordinary circumstances within the purview of Rule 35 and are insufficient grounds for supporting a Rule 35 reduction of sentence.").

[22] *Culp*, 152 A.3d at 146 ("Rule 35(b) is not the proper vehicle for seeking modification based on rehabilitation. The plain language of Rule 35(b) states that the rule should be construed in conjunction with 11 *Del. C.* § 4217, which allows for a modification of a sentence only upon application by the DOC for 'good cause' shown. 'Good Cause' under Section 4217 expressly includes, among other things, 'rehabilitation of the offender. . . . Thus, Section 4217 is the appropriate mechanism through which a defendant may pursue a sentence modification based upon rehabilitation.'"); *State v. Tollis*, 126 A.3d 1117, 1119 (Del. Super. Ct. 2016) ("Cause to reduce an inmate's level of custody or time to be served via a § 4217 application includes 'rehabilitation of

form of executive clemency.

(13) **NOW, THEREFORE, IT IS ORDERED** that Mr. Chambers' motion is **DENIED** not only because it an unexcused untimely Rule 35(b) application, but also because it is an attempt to implicate the Court in a violation of his plea agreement.

/s/ *Paul R. Wallace*

Paul R. Wallace, Judge

Original to Prothonotary

cc:    Mr. Rayquane G. Chambers, *pro se*
Anthony J. Hill, Deputy Attorney General
Investigative Services Office

---

the offender.' And so, claims like Tollis's—if they ever ripen—are properly addressed under title 11, section 4217.") (internal citations omitted); *Liket*, 2002 WL 31133101, at *2 ("[S]ince the purpose of 11 *Del. C.* § 4217 is to directly address modification of sentence based on a defendant's rehabilitation efforts, and 11 *Del. C.* §4217 is included within the constructs of Rule (35), it is evident that 11 *Del. C.* § 4217 is the appropriate governing statute through which Defendant may be entitled to a reduction in his sentence based on rehabilitation.").